AO 106 (Rev 04/10) Application for a Search Warrant

AUTHORIZED AND APPROVED/DATE: s/ Nick Coffey 6/2/23

# UNITED STATES DISTRICT COURT

### for the
### Western District of Oklahoma

*AMG*
*6/6/23*

In the Matter of the Search of
*(Briefly describe the property to be searched
or identify the person by name and address)*

A reddish orange iPhone, serial number unknown,
located at HSI 3625 NW 56th St., Third Floor, Oklahoma
City 73112

)
)
)
)
)
)

Case No. M-23- 438 -AMG

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A.

located in the _____Western_____ District of _____Oklahoma_____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 1956(h) | Money Laundering Conspiracy |

The application is based on these facts:

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Josh Reinsch, Special Agent, HSI
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 6 / 6 / 23

_____
*Judge's signature*

City and state: Oklahoma City, Oklahoma

Amanda Maxfield Green, U.S. Magistrate Judge
*Printed name and title*

## IN THE UNITED STATES DISTRICT COURT

## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| In the matter of the search of a **reddish orange iPhone, serial number unknown**, located at HSI Oklahoma City, 3625 NW 56th St., Third Floor, Oklahoma City, Oklahoma 73112 | Case No. _____ |

## AFFIDAVIT IN SUPPORT OF SEARCH WARRANT

I, Josh Reinsch, Special Agent with the Homeland Security Investigations (HSI), having been duly sworn, depose and state as follows:

1.     I make this Affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of property—an electronic device identified below and in **Attachment A**, which is currently in law enforcement possession—and the extraction from that property of electronically stored information described in **Attachment B**, which constitute evidence, instrumentalities, and fruit of violations of 18 U.S.C. §§ 1956(h).

2.     I am a special agent ("SA") of the Department of Homeland Security ("DHS"), Immigration and Customs Enforcement ("ICE"), Homeland Security Investigations ("HSI"), and as such am an investigator or law enforcement officer of the United States within the meaning of 18 U.S.C. § 2510(7), that is, an officer of the United States who is empowered by law to conduct investigations and make arrests for offenses enumerated in 18 U.S.C.

§ 2516.  I have been employed as a special agent with DHS/ICE/HSI since January 2010.  I am currently assigned to the HSI Office of Grand Rapids, Michigan.

3.     During the course of my employment, I have participated in numerous drug investigations involving marijuana, cocaine, heroin, fentanyl, and methamphetamine, which have resulted in the arrests of targets, the seizure of illicit drugs and drug-related evidence, and the forfeiture of drug-related assets.   I have conducted and supervised complex financial investigations involving the trafficking of drugs and other contraband, and money laundering including the structuring, placement, and layering of large amounts of U.S. Currency.  I have participated in and/or executed search and seizure warrants authorizing the search of locations used by drug traffickers and their co-conspirators, as well as vehicles used to transport controlled substances.   Materials searched for and recovered in these locations have included controlled substances, packaging materials, scales, cutting agents, weapons, documents and papers reflecting the identities of co-conspirators and receipts for concealed investments, and proceeds from the distribution of controlled substances.   I have personally participated in interviews of witnesses and cooperating sources regarding illegal trafficking in drugs and have read official reports of similar interviews by other officers.  I have also

participated in surveillance operations, observing and recording movements of persons trafficking drugs and those suspected of trafficking drugs.

4.     I have participated in four federal wiretap investigations throughout my career. During those wiretap investigations, I acted as a wire room supervisor, and as surveillance and operations Team Leader.  During all of the above-referenced wiretap investigations, I drafted affidavits for search warrants, organized surveillance operations, interviewed suspects, and executed search warrants.  I have conducted minimization, monitoring, and summarization procedures required as part of a wiretap investigation.  I also authored numerous tracking warrants to obtain precision location information for cellular telephones.  As a result, I have gained knowledge of the methods utilized by drug traffickers and other criminals to avoid detection by law enforcement.  In light of this training and experience, I know the following:

a.     I am aware of the methods in which drug couriers and money launderers associated with drug trafficking organizations (DTOs) often use electronic devices, including computers, tablets, cell phones, and other electronic storage devices, to communicate and execute electronic transactions which can, in turn, create automatic records and documentation of the transactions;

b.     I am aware that that it is particularly common for individuals engaged in the sale and distribution of illegal narcotics and/or money

3

laundering to use electronic devices to track and document financial transactions;

c.      I am aware that individuals engaged in drug trafficking and/or money laundering will often maintain more than one cell phone or electronic device, and that they will frequently keep contact information and other evidence of their financial dealings with DTOs on cellular phones, computers, tablets, and other storage devices and that they often keep such electronic devices on or near their person.

d.      I am also aware that individuals engaged in the sale and distribution of illegal narcotics and/or money laundering will use cellular phones   to   further   their   financial   businesses   using   digital communication, including, but not limited to, e-mail and instant messaging; and

e.      I am aware that drug traffickers and money launders use their cellphones and other electronic devices to execute financial transactions through banks, financial institutions, and peer-to-peer mobile payment platforms in furtherance of their drug trafficking.

5.      I am submitting this Affidavit in support of a search warrant authorizing a search of one cellular telephone, a **reddish orange iPhone, serial number unknown, currently in the custody of HSI Oklahoma City** (hereinafter the **SUBJECT DEVICE**), as further described in

4

**Attachment A**, which is incorporated into this Affidavit by reference.   I am submitting this Affidavit in support of a search warrant, which would authorize the forensic examination of **SUBJECT DEVICE** for the purpose of identifying electronically stored data that is particularly described in **Attachment B**, which constitute instrumentalities, evidence, and fruits of violations of 18 U.S.C. §§ 1956(h). The requested warrant would also authorize the seizure of the items and information specified in **Attachment B**.

6.      Based on my training, experience, and the facts set forth in this Affidavit, there is probable cause to believe that violations of 18 U.S.C. §§ 1956(h) have been committed by **Naiqing Lin (NAIQING)** and others. There is also probable cause to search the property described in **Attachment A** for instrumentalities, evidence, and fruits of these crimes, as described in **Attachment B**.

7.      Since this Affidavit is being submitted for the limited purpose of securing a search warrant, I have not included each and every fact known to me regarding this investigation.  I have set forth only the facts that I believe are necessary to establish probable cause to support the issuance of a search warrant.   The information contained in this Affidavit is based upon my personal knowledge and observation, my training and experience, conversations with other law enforcement officers and witnesses, and review of documents and records.

5

## PROBABLE CAUSE

8.      HSI, DEA, and IRS are presently investigating Naigang Lin (LIN) and his associates for money laundering and black-market marijuana distribution.  As explained in more detail below, LIN—a longtime Michigan resident—appears to have relocated to the Western District of Oklahoma, where he serves as a marijuana broker, taking advantage of the state's recent increase in marijuana grows—many of which investigators have determined are out of compliance with state law and are selling marijuana on the black-market. I believe that LIN is being sourced by these marijuana grows and is also providing money-laundering services to them.  The investigation has established that **NAIQING**, from whom the **SUBJECT DEVICE** was recently seized, is a money launderer for LIN.

9.      For example, **NAIQING** appears to be making use of funnel or fraudulent accounts.   An early example of such suspicious financial transactions occurred in March 2021 when Lake Michigan Credit Union ("LMCU") informed investigators that LIN held an account at LMCU, which was opened in 2019 and was closed in 2020 due to suspected fraud.  LMCU observed credits into the account that would come from an unknown source followed by rapid withdrawals at ATMs.  In email communication with LMCU, LIN told LMCU these were loans from friends that they were paying back. Based on my training and experience, however, large unexplained deposits

followed in quick succession by rapid withdrawals from ATMs is consistent with LIN using the LMCU account to launder illicit drug proceeds.

10.     Further documentation from LMCU indicated that **NAIQING** opened an account in February 2021 and immediately deposited over $30,000 in cash.  This deposit was then used to create a cashier's check for the purchase of a business building.  When asked for proof of residence, **NAIQING** provided a lease agreement with his cousin LIN (acting as the landlord) that indicated the address of the leased premises was the Bonasa Residence and that LIN's address was the 68th St. Residence.  LMCU determined that the cashier's check was intended to purchase 1400 Sunset, Lansing, Michigan (the "Sunset Property")—which investigators now know is owned by LIN and has since been found to contain an illegal marijuana growing operation.  LMCU documents also indicated the email address used by **NAIQING** to open the account was the same one that LIN used when he established an account at LMCU. Because of these circumstances, the account for **NAIQING** was immediately closed due to suspected fraud.  Based on my training, experience, and knowledge of the investigation, I believe that LIN was using his cousin **NAIQING** as a straw purchaser to launder cash through the purchase of a building because LIN was unable to obtain a second account at LMCU.

11.     **NAIQING's** primary use of a funnel account, however, appears to be through his use of Private Kitchen's bank account, a JPMorgan Chase

7

account ending in 2713 under the name JJ Gourmet Kitchen 168 LLC (the "Private Kitchen account").  The sole signer on the account is **NAIQING**. Because opening documents for the account list the address as 1117 NW 25th St, Oklahoma City, Oklahoma, where Private Kitchen is located, I believe that JJ Gourmet Kitchen 168 LLC is doing business as Private Kitchen.  The opening documents also indicate that the business of JJ Gourmet Kitchen 168 LLC was established in Oklahoma on February 16, 2022.  In my training and experience, it is common for money launderers to establish LLCs then open a corresponding bank account to launder the funds and make it appear legitimate.  The opening of the account and incorporation of the business coincides with the approximate timeline of when LIN moved to Oklahoma City. A review of the transactions in this account corroborate my belief that Private Kitchen, while having some legitimate operations, is being used to launder proceeds of the LIN DTO.  From February 23, 2022, to February 1, 2023, approximately $516,064.00 entered the account and approximately $577,325.11 exited the account.  Based on review of bank records for the Private Kitchen account, **NAIQING** appears to be using the account to launder in a variety of ways.

12. One way in which **NAIQING** is using the account is to pay marijuana couriers—couriers that would have no reason to be receiving payment from a Chinese restaurant in Oklahoma City. For example, on April

26, 2022, a $5,000 cash deposit was made into the Private Kitchen account. The same day, two checks ($2,500 each) were issued to Nathaniel Powell (POWELL)—whom a cooperating defendant identified as a marijuana courier for LIN and who was previously identified on December 20, 2021, meeting with LIN in Michigan.   Then, on May 17, 2022, a $1,000 check was issued to POWELL.  Again, POWELL does not work for and does not appear to have any legitimate business relationship with Private Kitchen.  Based on my training, experience, and knowledge of the investigation, I believe that **NAIQING** is using the Private Kitchen account to pay couriers—in furtherance of marijuana trafficking—and to disguise the nature and origin of the LIN DTO's marijuana proceeds.

13.    It also appears that the LIN DTO is depositing marijuana proceeds into the Private Kitchen account in a manner so as to avoid BSA reporting requirements.   For instance, on May 27, 2022, six ATM cash deposits in Oklahoma City occurred in the following amounts: $8,840, $3,250, $3,220, $3,140, $2,345, and $2,280.  In my training and experience, these deposits are done to avoid the federal reporting requirement through the banking system as to avoid reporting the source of the deposits to the bank. Legitimate cash deposits would be and could be made in one deposit, rather than splitting up the money into six separate deposits on the same day.

14.   Another example of this occurred on August 1, 2022, where five ATM deposits occurred on the same day in the amounts of $4,000, $3,700, $3,320, $2,960, and $2,000.  There is no legitimate explanation for why these cash deposits would be structured in this manner, other than to avoid bank reporting requirements.  All of these amounts are under the reporting requirement and during the time the account has been open, the majority of cash deposits are structured in this fashion.

15.   It also appears the account is being used to wash funds before they are remitted to other LIN DTO associates, including those that maintain their own marijuana farms.  On May 31, 2022, two checks were issued from the Private Kitchen account to Zhi Wei Chen (ZHI) in the amounts of $20,000 and $5,000.  The checks were deposited in Oklahoma City in ZHI's Bank of America account ending in 1097.  Then, on June 13, 2022, there was a check remitted from the Private Kitchen account to ZHI in the amount of $16,925. Financial analysis of ZHI's account indicated that ZHI would then Zelle money to individuals and make payments to Canadian Valley Electric Company in Oklahoma.  A subpoena was issued to Canadian Valley Electric for residences associated to the payments ZHI made which indicated that ZHI was paying utilities for various grows in Oklahoma.  According to the statements from ZHI's account, ZHI resides at a residence in Hayward, California, and not in Oklahoma.  ZHI has not been seen at Private Kitchen during surveillance and

appears to have no association with **NAIQING**. And it bears noting that throughout the investigation, law enforcement has seen instances where individuals residing outside of Oklahoma, primarily California, are utilizing laundered funds to pay for marijuana grows in Oklahoma.

16.     Based on my training, experience, and knowledge of the investigation, I believe that **NAIQING** is using the Private Kitchen account to pay marijuana couriers, to disguise those payments, and to wash the funds of other LIN DTO associates. Although there appears to be some legitimate money moving into the account in the form of Merchant Bank payments, the amount of cash deposits into the account that appeared to be structured in nature, as well as the payments to various known and unknown individuals that include a known courier for LIN and an individual that is making payments for utilities at marijuana grows, leads me to believe that the Private Kitchen account is being utilized to launder illicit funds.

17.     On May 2, 2023, in connection with that investigation, a sealed criminal complaint was filed against **NAIQING** and others charging them with a money laundering conspiracy from in or about January 1, 2019, through on or about May 1, 2023, in violation of 18 U.S.C. § 1956(h). On the same day, a federal arrest warrant was issued for **NAIQING**.

18.     On May 10, 2023, pursuant to that arrest warrant, **NAIQING** was arrested at his residence located at 571 74th St., Floor 2, Brooklyn, New York.

During the arrest, **NAIQING** had the **SUBJECT DEVICE** on his person and it was seized by law enforcement during the arrest.   The phone was then transferred down to the HSI office in Oklahoma City where it is currently being held.

19.   Based upon my training and experience, I am aware that individuals involved in trafficking illegal drugs and/or money laundering often use cell phones to maintain contact with other co-conspirators, including suppliers, transporters, distributors, and purchasers of illegal narcotics.   Such cell phones and their associated memory cards commonly contain electronically stored information which constitutes evidence, fruits, and instrumentalities of drug trafficking offenses including, but not limited to, the phone directory and/or contacts list, calendar, text messages, e-mail messages, call logs, photographs, and videos.

20.   Based on my training and experience, I know that individuals involved in trafficking illegal drugs and/or money laundering often take and store photographs of controlled substances and the proceeds of drug sales, and usually take and store these photographs using their cell phones.   I also know from training and experience that evidence of financial transactions conducted in furtherance of drug trafficking and money laundering will often be found on a suspect's cell phone.

21.    Based on my training and experience, I know that electronic devices like **SUBJECT DEVICE** can store information for long periods of time, even years. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the electronic device. This information can sometimes be recovered months or years later using readily-available forensic tools. This is true even if the user of the electronic device deleted the file. This is so because when a person "deletes" a file on a computer or electronic device, the data contained in the file does not actually disappear; rather, the data remains on the storage medium until it is overwritten by new data.

## AUTHORIZATION REQUEST

22.    Based on the above information, there is probable cause to believe that violations of 18 U.S.C. §§ 1956(h) have occurred, and that evidence, fruits, and instrumentalities of these offenses are located on the **SUBJECT DEVICE**. Therefore, I respectfully request that this Court issue a search warrant for the **SUBJECT DEVICE**, described in **Attachment A**, authorizing the seizure of the items described in **Attachment B**.

23.    Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the **SUBJECT DEVICE** consistent with the warrant. The examination may require law enforcement to employ techniques, including but not limited to computer-

13

assisted scans of the entire medium, which might expose many parts of the **SUBJECT DEVICE** to human inspection in order to determine whether it is evidence described by the warrant.

24.     Because the warrant seeks only permission to examine devices already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

_____
Josh Reinsch
Special Agent, HSI


SUBSCRIBED AND SWORN to before me this 6th day of June, 2023.

AMANDA MAXFIELD GREEN
United States Magistrate Judge

14

## ATTACHMENT A

The property to be searched is a reddish-orange iPhone, serial number unknown, hereinafter **SUBJECT DEVICE**. **SUBJECT DEVICE** is currently located at the Oklahoma City field office of Homeland Security Investigations, located at 3625 NW 56th St., Third Floor, Oklahoma City, Oklahoma 73112. This warrant authorizes the forensic examination of the Device for the purpose of identifying the electronically stored information described in Attachment B.



## ATTACHMENT B

1. All records on the **SUBJECT DEVICE** described in Attachment A that
   relate to violations of 18 U.S.C. § 1956(h) and that involve **NAIQING**, and
   other co-conspirators, from January 1, 2019, through present, including
   but not limited to:

   a. lists of customers and co-conspirators and related identifying
      information;

   b. communications and evidence of communications, including but not
      limited to call logs, voicemails, text messages, multimedia messages,
      emails, and messages sent through applications, between the user of
      the **SUBJECT DEVICE** and customers and co-conspirators;

   c. types, amounts, and prices of drugs trafficked as well as dates, places,
      and amounts of specific transactions;

   d. any information related to sources of drugs (including names,
      addresses, phone numbers, or any other identifying information);

   e. any information recording **NAIQING's** schedule or travel, including
      but not limited to location information; and

   f. all bank records, checks, credit card bills, account information, and
      other financial records.

2. Evidence of user attribution showing who used or owned the **SUBJECT
   DEVICE** at the time the things described in this warrant were created,

edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history.

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.